## JOHN WALLACE'S CASE.

### Waldo.    Opinion April 24, 1924.

*Section 36 of the Workmen's Compensation Act does not apply to a petition for review of decrees and agreements in which the period of compensation is not definitely fixed. An insufficient petition which might have been amended, where a new petition, based upon such findings of fact, would not be barred, that litigation may be terminated, may be regarded as amended.*

In this case the Industrial Accident Commission, treating the petition as amended, had jurisdiction and the findings of the chairman are supported by rational and natural inferences from facts and circumstances proved.

On appeal. On August 6, 1921, the claimant, a coal trimmer, was injured while in the hold of a vessel by a lump of coal falling from a digger and striking him on the left shoulder. An agreement was entered into between the employer and employee, duly approved by the Commission, that compensation should be paid at the rate of $16.00 per week during disability beginning August 13, 1921, which was paid up to February 24, 1923. On April 9, 1923, a petition for review was filed by the insurance carrier alleging that the disability had ended and praying that the compensation be ended.

Hearings on the petition were held June 12, September 19, and October 2, 1923, and the chairman found that the incapacity had not ended, and denied the petition and ordered the payment of compensation to continue from the date of the last payment, and respondents appealed. Appeal dismissed. Decree affirmed.

The case is fully stated in the opinion.

Claimant appeared without counsel.

*Andrews, Nelson & Gardiner,* for respondents.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, WILSON, DEASY, JJ.

HANSON, J. This is an appeal from the decree of a sitting Justice affirming the decision of the Chairman of the Industrial Accident Commission.

The claimant was injured on the sixth day of August, 1921, while trimming coal in the hold of a vessel, "when a lump (of coal) dropped from the digger overhead striking left shoulder" and bruised the same. Agreement for compensation beginning August 13, 1921, and continuing during disability, was entered into and approved by the labor commissioner on August 25, 1921, in which the injury and disability are, described as "abrasion . of left shoulder." Claimant received under the agreement $16.00 per week to February 24, 1923.

On April 9, 1923, appellants filed a petition for review of agreement or decree, alleging "that the disability had ended, and praying that compensation be ended, and for such further relief as may be properly granted."

Hearings on this petition were held June 12, September 19 and October 2, 1923.

It appeared from the testimony of the claimant that he had recovered from the injury to the shoulder, but at the hearing the claimant testified that he had an affection of the heart, and an umbilical hernia, as a result of the injury which was the subject of the agreement. The Commission found that the incapacity to work due to the injury of August 6, 1921, had not ended; that as a result of the accident claimant's heart was seriously affected and an umbilical hernia appeared. The condition of the heart is found "to have improved to such an extent that in so far as the heart is concerned, he would be able to resume some form of remunerative employment, but because of the presence of the umbilical hernia, which exists as a result of the injuries received by Mr. Wallace on August 6, 1921, he is unable to engage in manual labor at this time," and ordered payment continued.

Appellants contend "that there is no adequate legal evidence that the claimant was suffering from any disability due to the accident."

The chairman bases his decision "on the evidence submitted," and must have believed Mr. Wallace, who testified on being questioned by the chairman: "Q. Is there anything that occurred to you at the time of the accident in August, 1921, that prevents you from working today? A. I have a rupture in the navel and I never knew a thing about it until these two doctors examined me. I had never been examined below the belt. I went to Dr. Tapley and he put me on a table and found it—whether it happened then I don't know— I never had any soreness there before. Q. Do you claim that when the coal struck you—that was the only thing that struck

you?    A.    Yes, it kind of doubled me up and there has been a sore-
ness here ever since (indicating abdomen)." He further states that
he told Dr. Clark about the soreness, and that the soreness continued.
Dr. Clark, his first physician does not remember this, but says he
complained to him several weeks after the accident of "gas, indi-
gestion and heartburn," but that he never examined Wallace below
the waist.   The chairman then asked Dr. Clark:   "Q.   Do you
recall what his complaint was about the stomach, whether it was
soreness or not?"   His answer was, "I don't remember—I remember
him speaking about his food not digesting properly, and about gas."
"Q.   Would a ventral hernia cause trouble with the digestive organs?
A.   Yes.   Q.   Would it cause symptoms such as he complained of
when you first saw him or he first mentioned it to you?   A.   Possibly
it would."   Dr. Tapley testified that on his examination he found
a rupture of the navel, "that he (Wallace) didn't know much about
it before.   He might have got it then or might have had it a long
time.   That might have been caused by the injury.   I can't say, I
didn't see him before the injury.   Further that the rupture would
not disable him (Wallace) from manual labor if he wore a band around
his navel and was strapped up he could work."   At this point in the
testimony Mr. Wallace questioned Dr. Clark as follows:   "Q.   Do
you think anybody could work without the strap without knowing
it?"   His answer was, "No, I don't think so."   Dr. Tapley expressed
the opinion that a man could not work with the heart trouble and
hernia with which the claimant was afflicted when he first saw him,
or that he could have worked as a coal trimmer in such condition.
Questioned by claimant's counsel, he stated:   "Q.   He might have
had heart trouble coming on?   A.   He might have.   To reach the
degree in which it was when he came to me he couldn't have been
shoveling coal.   He might have had this accident—he might have
had this condition and this accident shot him to pieces—may be all
it needed was a shock from some accident to light it all up."   "Q.   It
was a small hernia?   A.   Yes, they look small—it is four inches
right through him.   .   .   .   .   A man might have a rupture a long
time and not know it.   .   .   .   .   I may say in shoveling coal he
might have had it but I believe he would have had to have a truss."
This witness further stated to the commissioner on being questioned,
"Q.   He states when this coal struck him it doubled him right
down?   A.   If he had any weakness there whatever and you press

his abdomen that way that increases the abdominal pressure and it has got to bust somewhere, either there or somewhere else wherever there is weakness. I will not say he didn't have a weak abdomen and the starting of a hernia but if he got doubled up like that it would be likely to complete it." Dr. Goodwin of Bangor found the hernia and gave it as his opinion that the hernia existed before the accident. . . . . "Q. Was it a congenital condition? A. It would be pretty hard to say. There is a difference of opinion in regard to hernias. Some men consider the hernias are always there. That is, that there is a congenital weakness there and a man gets some little strain or stress and that causes it to become troublesome." Such is the testimony. The claimant testified that he had no knowledge of trouble in the region of the navel before the accident, and that from the time of the accident he had been troubled in that region. A few weeks after the accident he was examined by Dr. Tapley and a rupture was found where the claimant had complained of pain and discomfort. That rupture was, in Dr. Tapley's opinion, of recent origin. Dr. Goodwin found it and says it was not of recent origin. All, claimant and doctors as well, say there is a rupture · now present.

On the evidence could the chairman find that the rupture constituted a compensable injury under the Act? We think the evidence would authorize the Commission to find that the hernia existed before the accident and that the accident caused the surface manifestation of the same to thus appear. Patrick v. Ham, 119 Maine, 519; Orff's Case, 122 Maine, 114. A finding that the hernia was caused by the accident would have some legal evidence to support it. It is settled that if the evidence is wholly or in part circumstantial, and there is a dispute as to what the circumstances are, the determination of such dispute by the commissioner is final. It is for the trier of facts who sees and hears the witnesses to weigh their testimony and without appeal to determine their trustworthiness. Mailman's Case, 118 Maine, 177; Sebastian Uzzio's Case, 228 Mass., 331; Brown's Case, 228 Mass., 31; Negligence and Compensation Cases, Vol. 6, 399. Id., Vol. 17, 190. We think the facts and circumstances shown are more consistent with the commissioner's finding than with any other theory, and that the finding is supported by rational and natural inferences from the facts and circumstances proved. Mailman's Case, supra; Orff's Case, 122 Maine, 114.

Appellants sought a review under Section 36 of the Act. The commission proceeded thereunder. The agreement in the pending case, however, was an open end agreement. Its point of beginning was fixed, August 13, 1921, but the date of expiration was not fixed. Compensation was to continue "during disability," not exceeding of course the statutory limitation. This court has distinctly and recently decided that Section 36, prescribing a petition for review of decrees and agreements, does not apply to agreements in which the period of compensation is not definitely limited. *Milton's Case*, 122 Maine, 437. Under that authority the petition in this case might be dismissed.

But in our opinion, in order to avoid further litigation, instead of sending the petition back for amendment we may regard the petition as amended so as to present a claim for the determination of present incapacity to labor, under Section 16, a form of procedure not specifically prescribed by statute. This liberal method of procedure was adopted in *Morin's Case*, 122 Maine, 338, 342. Thus treating the petition, the chairman had jurisdiction and his findings of fact that the compensation should not be diminished or ended, stands.

The result is the same as if the petition for review were dismissed.

*Appeal dismissed.*
*Decree affirmed.*